IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT S. KERR, III, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-95-C |
| | ) | |
| UMB BANK, N.A., a national | ) | |
| banking association, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs, remaindermen beneficiaries of a trust, assert breach of fiduciary duty and gross negligence claims against Defendant, the corporate trustee of the trust, based on its repeated distribution of trust principal to the income beneficiary. Defendant seeks summary judgment on those claims.

### STANDARD OF REVIEW

Summary judgment is proper only if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id.

If the movant carries the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which could convince a rational trier of

fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler, 144 F.3d at 672.

At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). Thus, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); McWilliams v. Jefferson County, 463 F.3d. 1113, 1116 (10th Cir. 2006); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

## BACKGROUND

Plaintiffs are three of the late Robert S. Kerr, Jr.'s seven adult children and remaindermen beneficiaries in trusts established by their paternal grandmother, Grayce Kerr Flynn. In 1965, Mrs. Flynn established a "generation skipping" trust that would provide income to her several children during their lives and, upon their deaths, the corpus would be distributed to her grandchildren. When Mrs. Flynn died, additional trusts were created for the benefit of her children and grandchildren under her will. In 1989, the trusts were

reformed and divided into separate trusts for each of Mrs. Flynn's children pursuant to a state court order and the beneficiaries' agreement. Two of the trusts created for the benefit of Mr. Kerr as an income beneficiary and his children as the remaindermen beneficiaries are collectively referred to herein as the Flynn Trusts. Both the original trust agreement and the will contain provisions giving the corporate trustee discretion to distribute principal to Mr. Kerr for his health, support, and maintenance. (Def.'s Ex. 1 (Trust Agreement, art. III (c)); id. 3 (Flynn Will, art. 5.03(c); art. 5.06(c)).)

Defendant UMB, a national bank, is the most recent corporate trustee of the Flynn Trusts. Defendant accepted the appointment in March 1999, at which time Mr. Kerr was already indebted to the Flynn Trusts for more than $2.02 million. In April 1999, Mr. Kerr received an additional $200,000 loan from the Flynn Trusts. However, banking regulations prohibited any subsequent loans because Loualma Kerr, Mr. Kerr's wife, was appointed to Defendant's Board of Directors in late 1999.[1]

There is no clear and undisputed accounting of the amount of principal Mr. Kerr received from the Flynn Trusts between 1999 and 2002. However, it appears that he received

---

[1] An internal Defendant e-mail dated February 24, 2000, summarizes, "[W]e cannot make a loan from the trust account to the spouse of a director," relying on 12 U.S.C. 92a(h) and federal regulations for support. Pls.' Ex. 6. Subsection (h) states:

> It shall be unlawful for any national banking association to lend any officer, director, or employee any funds held in trust under the powers conferred by this section. Any officer, director, or employee making such loan, or to whom such loan is made, may be fined not more than $5,000, or imprisoned not more than five years, or may be both fined and imprisoned, in the discretion of the court.

at least $382,125.24 during that period.  Apparently, these distributions were requested and approved by Defendant for the payment of delinquent tax liabilities, mortgage payments, life insurance premiums, and other living expenses and to allow Mr. Kerr to maintain his standard of living.

Royce Hammons, the president of Defendant bank in Oklahoma, was Mr. Kerr's friend and personal banker.  Mr. Hammons communicated with Kenneth Herring, the trust officer responsible for the Flynn Trusts, regarding principal distribution requests and relayed other questions from Mr. Kerr.  Mr. Herring prepared several memos to the Trust Management Committee recommending discretionary principal distribution requests between 1999 and 2001.  In some, Mr. Herring asserts that he has reviewed a financial statement, but Plaintiffs argue that the date on the accountant's letters indicate that he did not have current financial statements when he made his recommendations.  In any event, Mr. Herring has testified that he undertook no independent investigation of either Mr. Kerr's or his wife's available income and did not believe such investigation was required of the corporate trustee. Mr. Herring knew that Defendant had "multiple relationships" with the Kerrs and that they were important customers.  (Pls.' Ex. 10, Herring Dep. at 37, 86.)

Mr. Herring also wrote a letter to Mr. Kerr in October 1999 explaining that the amount of monthly income distributions he had been receiving would have to be lowered because the projected income for the trusts was overstated due to the loans to Mr. Kerr.  (Def.'s Ex. 9.) In a subsequent meeting with Mr. Kerr, it was apparently decided that Mr. Kerr would

continue to receive the same monthly payout, but that a portion of the funds would come from principal.  (Def.'s Ex. 10.)

Plaintiffs complain that Defendant failed to investigate whether Mr. Kerr had other income available to him or what, if any, Mrs. Kerr's status as a board member had on its decision to make principal distributions.  They contend that Defendant was improperly influenced by its other dealings with the Kerrs, including its status as a creditor and as an investment advisor to the Kerr Foundation, Inc.  Finally, Plaintiffs suggest that the lack of documentation from or to the Trust Management Committee regarding a 2002 loss of principal shows that Defendant did not follow its own policies and procedures when it came to Mr. Kerr and the Flynn Trusts.  In January of that year, Defendant forgave a $120,000 debt on Mr. Kerr's mortgage that was held by the Flynn Trusts.

## DISCUSSION

The critical question in this case is whether Defendant abused its discretion when it made repeated principal distributions from the Flynn Trusts between 1999 and 2002.

According to the Restatement (Third) of Trusts:

(1)     A discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is subject to judicial control only to prevent misinterpretation or abuse of the discretion by the trustee.

(2)     The benefits to which a beneficiary of a discretionary interest is entitled, and what may constitute an abuse of discretion by the trustee, depend on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust.

Restatement (Third) of Trusts § 50 (2003).  The Court interprets the trust instrument as a matter of law, applying the plain language of the agreement and construing it in favor of the beneficiaries.  See Matter of Home-Stake Prod. Co. Deferred Compensation Trust, 1979 OK 81, 598 P.2d 1193, 1196.

The Flynn Trusts are governed by two documents: the 1965 Trust Agreement and Mrs. Flynn's will.  Both provide for the regular distribution of net income to Mr. Kerr and grant the corporate trustee discretion to make principal distributions to him as well.  The Trust Agreement includes the following provision:

> In addition to the net income hereinbefore provided to be paid to [Mr. Kerr], the corporate Trustee, acting alone and without the individual Trustees . . . may in its sole discretion . . . pay over to or apply for his . . . benefit, from time to time, so much of the principal of the trust estate as said corporate Trustee, . . . in the exercise of its uncontrolled discretion shall deem necessary or advisable for his . . . health, support and maintenance, having in mind both the standard of living to which he . . . has been accustomed and the income or principal that may be available to him . . . from other sources known to the corporate Trustee.

(Def.'s Ex. 1, art. III, (c).)  The will contains a similar provision:

> The trustee shall pay to or for the benefit of each child of mine during his or her lifetime the remaining net income from his or her trust in quarterly or more frequent installments, and so much of the principal thereof as the corporate trustee in its sole discretion may deem necessary or advisable for his or her health, support and maintenance, taking into consideration all other income available to him or her from all sources known to the trustee.

(Def.'s Ex. 3, art. 5.03(c).)

These provisions confer broad discretionary power on the corporate trustee in deciding whether to distribute principal to Mr. Kerr for purposes of his health, support, or

6

maintenance.  The settlor's intent was clearly to provide for regular income distributions to Mr. Kerr as well as to additional distributions of principal as necessary or advisable for his health, support, or maintenance during his lifetime.  Contrary to Plaintiffs' contention, there is no demand that the trustee "investigate" the income beneficiary's financial situation or claim of need in the sense of requiring that the Kerrs submit a complete financial portrait to show all available resources.  The trustee was entitled to rely on the beneficiary's representations and on the financial information known to it at the time of the requests.  See Restatement (Third) of Trusts § 50 cmt. e (2003).  Of course, a trustee must always exercise its discretion fairly and reasonably, see Stallard v. Johnson, 1941 OK 199, 116 P.2d 965, 966 (1941), and is prohibited by statute from making adjustments between principal and income if it, as a non-beneficiary, would benefit directly or indirectly, 60 Okla. Stat. § 175.104(C)(8).    After carefully reviewing the record and the parties' arguments, the Court holds that summary judgment is appropriate.  Plaintiffs offer no evidence that Defendant knew or had reason to know that Mr. Kerr's available income was such that the requests for principal distributions for the purposes indicated were unnecessary or inadvisable.  The need for funds to pay tax liabilities, make mortgage or life insurance payments, and for other living expenses were for Mr. Kerr's health, support, and maintenance, even if they also benefitted Mrs. Kerr.  See Restatement (Third) of Trusts § 50 cmt. d(2) (2003) (explaining that the support standard generally includes the support of members of the beneficiary's household and current spouse).  That Defendant may have

referred to dated financial information does not indicate an abuse of discretion.[2]  Nor does

Mr. Hammons's involvement suggest that the controls in place to insure that the "decisions

made by trust officers regarding trusts are independent from the commercial bank and its

lending practices" (Def.'s Ex. 15, Tasch Aff. ¶ 4) were compromised.

Similarly, the Kerrs' other dealings with Defendant and Mrs. Kerr's status as a board

member are insufficient in themselves to support an inference that Defendant's management

of the Flynn Trusts was improper.  Although a trustee is not permitted to preference itself

over the interests of trust beneficiaries, income and remaindermen alike, a reasonable and fair

exercise of discretion is not an abuse or breach of fiduciary duty simply because it may have

a remote but favorable impact on the trustee.  Moreover, here, Plaintiffs' evidence does not

support or quantify their allegations that the principal distributions to Mr. Kerr benefitted

Defendant even indirectly.  Plaintiffs make much of the "multiple relationships" that existed

between the Kerrs and Defendant.  However, as long as controls existed to maintain

independence and impartiality, the existence of those relationships and the Kerrs being

important banking customers does not impugn all trust management decisions that may have

negatively effected the remaindermen.  And although the apparent lack of documentation

regarding the $120,000 debt forgiveness in 2002 is troubling, the evidence simply does not

support the inference that this loss of principal resulted from an abuse of discretion.

---

[2] Even the financial information produced by Plaintiffs regarding Mr. Kerr's net worth does not take into account his ability to access assets or offset liabilities.

## CONCLUSION

In sum, the Court finds that no genuine issue of material fact is in dispute and Defendant is entitled to judgment as a matter of law on Plaintiffs' claims for Breach of Trust: Wrongful Distributions, Negligence, and Gross Negligence.   Defendant's Motion for Summary Judgment (Doc. No. 59) is GRANTED.   Accordingly, the Third Party Complaint (Dkt. No. 21) is MOOT.

IT IS SO ORDERED this 20th day of December, 2007.


ROBIN J. CAUTHRON
United States District Judge